UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

WILLIE A. RUCKER,

        Plaintiff,

        v.                                   Case No. 07-C-0999

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

DECISION AND ORDER REVERSING COMMISSIONER'S DECISION
AND REMANDING FOR FURTHER PROCEEDINGS

        Willie A. Rucker seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) discontinuing his disability insurance benefits. For the following reasons, the Commissioner's decision will be reversed and the matter will be remanded for further proceedings.

        Rucker applied for disability insurance benefits in August 1992, alleging that he had been disabled since April 15, 1989, due to bipolar disorder. (Tr. 20-23.) In an October 1992, decision, the SSA found Rucker disabled since April 15, 1989, deciding that his bipolar disorder met the requirements of section 12.04 of the listing of impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 13, 98-107.) Rucker's benefits continued for several years.

        The SSA must conduct continuing disability reviews. 20 C.F.R. § 404.1594. In January 2001, the SSA conducted such a review of Rucker. Because Rucker had not provided current medical evidence or reported to a psychologist appointment set up by the SSA, the SSA determined that Rucker was no longer disabled as of November 2000. (Tr.

131-34.) Rucker requested review of the decision and agreed to undergo an examination. (Tr. 135.)

Thereafter, on July 17, 2002, a disability hearing officer determined that Rucker's disability had ceased. (Tr. 139-53.) According to the hearing officer's report, Rucker had stated that he did not have a manic-depressive episode between 1997 and May 2002, that after the 2002 episode he had gone back to normal functioning, and he had been off of medication for over a year. Rucker had described four-day episodes occurring approximately every two to three years. Notes from a May 2002 clinic visit to Rucker's psychotherapist and psychiatrist described his condition as stable. (Tr. 139-45.) The hearing officer found that because of the bipolar disorder, Rucker

> would not be able to handle extremely stressful situations where understanding, remembering, and carrying out an extensive variety of technical and/or complex job instructions would be required. He would, however, be able to understand, remember, and carryout [sic] simple one- or two-step job instructions, interact with supervisors and coworkers, and maintain concentration and attention. These findings are based on the hearing officer's evaluation of medical evidence, in consideration of the testimony of the claimant, and observations of the claimant at the hearing.

(Tr. 144-45.) The hearing officer stated that "[s]ince the signs, symptoms, and findings show a decrease in overall medical severity, it is concluded that there has been medical improvement of the claimant's impairment" and therefore Rucker no longer met the listings. (Tr. 148.) The officer found no exertional limitations and stated that in accordance with SSR 85-15 Rucker's ability to meet the work-related activities (the simple instructions and interactions noted above) on a sustained basis meant he was not severely limited in jobs available in the economy. (Tr. 149-52.)

2

Rucker sought a hearing by an administrative law judge (ALJ), claiming that he continued to have bipolar episodes, manic depression, and a learning disability that prevented him from working. (Tr. 155-66.) A hearing was held on April 29, 2003, at which Rucker testified. (Tr. 427-39.) On July 25, 2003, ALJ Donald E. Limer issued his decision finding Rucker's disability had ceased in November 2000. (Tr. 242-52.) The ALJ found that earlier medical evidence showed a long history of psychological problems and a diagnosis of bipolar affective disorder, but that recent medical evidence showed improvement and normal intelligence. Rucker had earned a high school equivalency certificate and an associate's degree. The medical evidence reviewed by the ALJ included February 2001 evaluations by Paul Barno, M.S., through Milwaukee Health Services, a psychiatric assessment by Dr. Gerald Clinton, and a consultative mental status evaluation by Dennis Jackson, Ph.D. (Tr. 247-48.) The ALJ found:

> The medical evidence of record establishes that Mr. Rucker suffers from bipolar disorder . . . . However, based on the medical evidence and the entire record, the undersigned . . . finds that the claimant's psychological impairments cause him only minimal functional limitations. Based on the medical evidence, the testimony of the medical expert, and the entire record, the undersigned Administrative Law Judge finds Mr. Rucker to have only a slight restriction of activities of daily living. The evidence of record shows that although he lives upstairs from his mother, he lives independently and is able to clean, cook simple meals, shop, watch television, read, use public transportation, and care for his personal needs. Next, the undersigned finds that the claimant has only slight difficulties in maintaining social functioning. Mr. Rucker has been described as relaxed, cordial, and friendly. He has friends and is close to his mother. The undersigned finds, and the evidence substantiates, that the claimant has only slight deficiencies in concentration, persistence, or pace. . . .
> In summary, the medical evidence establishes that the claimant suffers from a bipolar affective disorder, which is considered to be a severe impairment. However, the

3

> undersigned finds that the record does not document that the claimant's impairment presently meets or equals the requirements of any impairment listed in . . . the Listing of Impairments. Furthermore, the record no longer documents that the claimant continues to have marked limitations in his activities of daily living and in maintaining social functioning. Nevertheless, the undersigned acknowledges that although the claimant's impairments are no longer as severe as at the time of the comparison point decision, his impairments do cause him some functional limitations that affect his ability to perform work related activities. Accordingly, the undersigned finds that the claimant's psychological impairment limits him to low-stress, unskilled work. Thus, the undersigned finds that the claimant has gained the capacity to meet the basic mental demands of unskilled work. Consequently, the undersigned finds that there has been medical improvement in the claimant's condition and that such improvement is related to the claimant's ability to work. The undersigned further finds that as there is no evidence that the claimant has alleged, or suffers from any functionally limiting physical impairment, he has no exertional limitations.

(Tr. 248-49.) The ALJ noted SSR 96-7p and Rucker's claims regarding pain and limitations, but discussed the medical evidence and Rucker's activities in support for his conclusion "that the medical record does not document the level of limitation described by the claimant and that the claimant remains pretty active." (Tr. 250.)

Rucker appealed the decision, and the Appeals Council vacated the ALJ's decision and remanded the case for additional proceedings. (Tr. 263-65.) The Appeals Council found that the ALJ had not fully addressed Rucker's mental functional capacity, evidence such as a consulting psychologist's opinion that Rucker would be able to work intermittently but his ability to sustain long-term competitive employment was questionable, specific job functions that Rucker found stressful, and how his reaction would affect his ability to work. The Appeals Council found that a vocational expert was needed. (Tr. 263-64.) Upon remand, the ALJ was to obtain supplemental evidence from a medical expert

4

to clarify the nature and severity of Rucker's mental impairments, give further consideration to Rucker's maximum RFC, provide appropriate rationale and references to the record, and obtain evidence from a vocational expert clarifying the effect of the assessed limitations on Rucker's occupational base. (Tr. 264.)

Another administrative hearing was held on December 20, 2006. (Tr. 314, 440.) A medical expert and a vocational expert testified along with Rucker. (Tr. 456-63.) In his testimony, Rucker did not focus on back pain. (*See id.*)

In a decision issued February 22, 2007, ALJ Limer again found that Rucker's disability had ceased on November 1, 2000, because he had experienced medical improvement such that he no longer met the listings, and could perform a significant number of light-level jobs despite his mental and physical impairments. (Tr. 12-17.) The ALJ noted the evidence from Paul Barno, MS, and Dr. Gerald Clinton and Dennis Jackson, Ph.D., which had been in the record previously, as well as new evidence submitted from a Dr. Najeeb covering the period from 2003 to 2006. The ALJ observed that Dr. Najeeb's notes showed that for several months, Rucker complained of back pain which was treated with anti-inflammatory medications. (Tr. 13.) Also, the ALJ stated that the new medical expert testimony regarding the severity of Rucker's psychological limitations "did not indicate that the claimant's history of psychological impairments would have any significant effect on his current level of functioning." (Tr. 14.)

The Appeals Council denied review (Tr. 5-7), resulting in the ALJ's decision becoming the Commissioner's final decision. It is this final decision that is now under review.

5

Rucker is proceeding pro se in this case. As this court noted in its Order of January 7, 2010, Rucker filed a document titled "Motion and Notice of Interim Benefits while Application is Pending in Federal Court," which appeared to be an attempt to obtain a preliminary injunction. This court summarized the document as follows:

> The purpose of the document is unclear. Rucker seems to think the State of Wisconsin, Milwaukee County, the Wisconsin Departments of Workforce Development and Health and Family Services, and other state or local agencies are parties to this case. Under a heading of "Factual Meritorious Evidence" he narrates how he received certain traffic citations, says he was pulled over by Shorewood, Wisconsin, police officers based on profiling, and then discusses reinstatement issues regarding his driver's license. Rucker discusses how he applied for housing and discusses his interactions with local services for housing assistance. Several pages then appear to list exhibits or docket entries or quotes from court orders from paternity and child placement proceedings in state court. In addition, he describes financial aid issues at the University of Wisconsin at Milwaukee. All of this appears to be irrelevant to the issue before this court, which is whether the Commissioner's decision to terminate Rucker's disability benefits should be affirmed or reversed. Moreover, the bulk of the twenty-eight single-spaced pages does not consist of argument or any attempt to explain matters to this court, but rather lists a chronology of various proceedings in other forums, and even in this forum, as Rucker recites proceedings in a prior federal case he filed, *Rucker v. Astrue*, No. 07-C-21 (E.D. Wis. dismissed Oct. 24, 2007), as well as this case. Towards the end of the document Rucker includes several case citations, without explaining their relevance.

(Order of 1/7/10 at 2-3 (citations and footnote omitted).)

As stated previously, "this 'brief' cannot possibly persuade the court that the Commissioner's discontinuation of disability benefits should be reversed or the matter remanded. The court gains a sufficient understanding of the case only from the *defendant's* brief." (*Id.* at 3.) Chronologies of child custody proceedings and lists of

6

correspondence with various state and federal agencies are unhelpful and irrelevant to whether ALJ Limer's second decision should be overturned by this court. Rucker provided no discussion of the ALJ's 2007 decision nor any suggestion as to what ALJ Limer did wrong. A request for reinstatement of benefits after twenty-eight pages of inapplicable chronology does not support a finding in Rucker's favor.

Inasmuch as Rucker is proceeding pro se, and there were problems with the record in this case, such as the lack of a transcript, this court allowed Rucker the opportunity to file another brief in support of his case and directed him to review this court's order of April 30, 2008, which described for him the Statement of the Case and Statement of Errors, which the court desired. However, notwithstanding his having been given permission for another brief, Rucker failed to file one. Therefore, the court decides the case based on Rucker's first brief (doc. 14), the Commissioner's brief, the exhibits and argument in Rucker's documents filed at docket numbers 22 and 23 (as noted in this court's order of January 7, 2010), and the transcript of the administrative proceedings.[1]

---

[1] Although the court in its January 2010 order stated that documents 22 and 23 would be considered, it now is apparent that document 22 and almost all of document 23 are irrelevant. Document 22, Rucker's affidavit, concerns Rucker being labeled as learning disabled and taken out of mainstream classes in the fifth grade in the Milwaukee Public Schools system and his application to the Wisconsin Division of Vocational Rehabilitation for college assistance. Whether Rucker was labeled correctly or received special or mainstream education turns out to be inconsequential for the matters now before this court. Document 23 is a set of exhibits Rucker submitted, and all but a couple are irrelevant. For example, exhibit 1 is his high school transcript; exhibits 2, 3, 5, 15, and 16 concern forgiveness of student loan debt due to disability; and exhibit 25 is a chart of Social Security cost of living adjustments from 1975 to 2007. Other documents concern Rucker's mental health, but the majority of these documents are from the 1980's and 1990's, before his benefits were discontinued. For instance, exhibit 7 is a vocational report from 1992; exhibits 18 through 21 concern Rucker's requests for accommodations at the University of Wisconsin-Milwaukee in 1996 and 1997. Although perhaps helpful for Rucker's prior mental health history, the documents are not helpful for determining whether in 2000 and after he continued to have a disability that prevented him from working. The court has found relevant only exhibit 22, which is a doctor's statement regarding Rucker's mental condition dated October 2003, and exhibit 26, which is a page of an ALJ's opinion. Because the full opinion is in the transcript, only exhibit 22 is useful for the court.

7

Disability is defined, in part, as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairments." 20 C.F.R. § 404.1594(b)(4). As indicated above, if disability insurance benefits are awarded, the SSA must conduct continuing disability reviews. 20 C.F.R. § 404.1594. Regulations provide the procedure for such reviews. Except in certain instances, an individual's disability will be found to have ceased if there has been medical improvement in the impairment and the improvement is related to the ability to work. 20 C.F.R. § 404.1594(a). "Medical improvement" means any decrease in the medical severity of the impairment(s) present at the time of the most recent medical decision that the individual was disabled (or continued to be disabled). § 404.1594(b)(1), (c)(1). If the medical improvement relates to the ability to work, generally the SSA must show that the individual is able to engage in substantial gainful activity before any finding that he or she is no longer disabled. § 404.1594(a), (b)(3).

The regulations require the SSA to follow several sequential steps in determining whether disability insurance benefits should be discontinued. § 404.1594(f). First, the hearing officer or ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If so, the disability has ceased. § 404.1594(f)(1). If not, at step two, if the claimant's impairment meets or equals one of the impairments listed in the SSA's listing of regulations, 20 C.F.R. pt. 404, subpt. P, app. 1, as being so severe as to preclude substantial gainful activity, then the disability continues. § 404.1594(f)(2). If not, at step three, the ALJ determines whether there has been medical improvement. § 404.1594(f)(3). If medical improvement has occurred, at step four the ALJ determines whether the medical improvement relates to the claimant's ability to work, i.e., whether

8

there has been an increase in the claimant's residual functional capacity (RFC). § 404.1594(f)(4). RFC is the most an individual can still do after considering the effects of physical and mental limitations that affect the ability to perform work-related tasks. 20 C.F.R. § 404.1545(a). If no medical improvement has occurred or improvement is not related to the ability to work, disability will be continued unless certain exceptions apply. § 404.1594(f)(5). However, where there has been medical improvement related to the ability to work, the next question is whether all of the current impairments in combination are severe such that they significantly limit the physical or mental ability to do basic work activities. If not, disability has ended. § 404.1594(f)(6). If the impairments in combination are severe, the ALJ next looks at whether the claimant has the RFC to perform his past relevant work. If so, the disability has ceased. § 404.1594(f)(7). If not, or there is no past relevant work, the final question is whether, given the RFC and the claimant's age, education, and past work experience, the claimant can perform other work that exists in the national economy in significant numbers. If so, disability has ceased. § 404.1594(f)(8).

Under § 405(g), this court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence" and is based on the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, if supported by substantial evidence, are conclusive. *Id.* Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). This court cannot reweigh evidence or substitute its judgment for that of the ALJ. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). If the ALJ commits an error of law, however, reversal is required without regard to the volume of evidence in support of the factual

9

findings. *Id.* The ALJ commits such an error if he fails to comply with the Commissioner's regulations and rulings. *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

An ALJ must "'minimally articulate his reasons for crediting or rejecting evidence of disability,'" *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)), "build[ing] an accurate and logical bridge from the evidence to his conclusion," *id.* at 872. Although the ALJ need not discuss every piece of evidence, he or she cannot select and discuss only the evidence supporting the decision. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The district court should remand the case if the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted). A "sketchy opinion" may be sufficient, however, if it is clear the ALJ considered the important evidence and his or her reasoning can be traced. *Id.* at 787.

Rucker's filings do little to persuade the court that the ALJ's decision should be overturned; again, his brief and other documents provide little basis for finding error. Nevertheless, the case must be remanded for reconsideration by the ALJ, as it is plain from the ALJ's decision that he committed an error of law by not following all of the steps for disability review set forth in § 404.1594.

In his first decision in Rucker's case, issued July 25, 2003, the ALJ proceeded through the required sequential analysis for benefits assessment. He found that Rucker was not engaging in any substantial gainful work activity; Rucker still suffered

10

from bipolar disorder but not to an extent that met the listings; the impairment of bipolar disorder had improved since the disability determination in 1992 and the improvement related to Rucker's ability to work; the impairment was severe; the impairment limited Rucker to low stress, unskilled work; Rucker could not perform past relevant work; and, even considering Rucker's nonexertional limitations, and inability to perform the full range of work there were a significant number of jobs in the national economy that he could perform. (Tr. 251.) However, the Appeals Council found that the ALJ had not addressed fully Rucker's mental functional capacity and specific job functions that were stressful to Rucker, and how Rucker's reaction would affect his ability to work. Therefore, the Appeals Council vacated that first ALJ decision and remanded the matter for testimony of another medical expert and a vocational expert.

The second decision in Rucker's case, issued February 22, 2007, does not demonstrate that ALJ Limer proceeded through the required sequential analysis. The ALJ completed step one, finding that Rucker was not engaged in substantial gainful activity. However, the ALJ then failed to assess whether Rucker's bipolar disorder, which had been the basis for the benefits granted to him in 1992, continued and met the listings.

Moreover, the ALJ failed to discuss steps three and four, i.e., whether there had been medical improvement in Rucker's bipolar disorder and whether the medical improvement related to Rucker's ability to work. Although Rucker's medical files and the testimony showed that he had not been treated for bipolar disorder for three years, he explained that it was only because he had no insurance or money to pay for treatment. (Tr. 443-44.) Further, the medical expert at the December 2006 hearing said he did not believe that Rucker actually suffered from bipolar disorder but indicated that Rucker's mental

11

health issues had a mild effect on his daily living activities and mild effects on his ability to concentrate, remember and focus. (Tr. 460.) Yet the ALJ failed to discuss whether Rucker's mental condition had stayed the same or had changed in any way since the prior decision. Next, he failed to provide a logical bridge in his reasoning regarding whether Rucker's bipolar disorder had improved and whether the improvement related to the ability to work. If the ALJ had determined that Rucker no longer suffered from bipolar disorder or any other mental condition, that needed to be discussed.

Nevertheless, the case must be remanded because the ALJ neglected to discuss the next step, i.e., whether *all of the then-current impairments in combination* were severe such that they limited significantly Rucker's physical or mental ability to do basic work activities. The 2007 findings mention only Rucker's back pain. No mention of Rucker's then-existing mental condition or limitations (or lack of limitation) on work due to that condition was made by the ALJ; a fair reading is that Rucker's mental condition and any resulting limitations were ignored. The Appeals Council mentioned specifically the need to address Rucker's mental limitations on remand. Further, at the December 2006 hearing Rucker testified that he had left a job in 2002 because of psychosis and nervous breakdowns and personal problems dealing with work issues. (Tr. 443.) He testified that he had difficulty dealing with issues of communication and dealing with a supervisor or manager at a job. (Tr. 448.) Although the medical expert at the December 2006 hearing expressed his view that Rucker did not suffer from bipolar disorder, he indicated Rucker's mental health issues had a mild effect on his daily living activities and mild effects on his ability to concentrate, remember and focus. (Tr. 460.) The ALJ failed to synthesize this

12

new testimony and medical documentation with the previous evidence and his earlier findings.

Rucker's more recent medical records discuss his back pain. The ALJ acknowledged that condition correctly, but his decision shows no consideration of the back pain in conjunction with Rucker's already-recognized mental limitations or, alternatively, a discussion as to why the ALJ was finding no limitations based on mental condition to exist.

Further, and very importantly, Rucker testified at the December 2006 hearing that a couple months previously he was diagnosed with diabetes and he was suffering joint pain related to the diabetes. (Tr. 447.) He said he was taking diabetes medication and ibuprofen for pain. (Tr. 448.) Also, he testified that because of the joint pain related to diabetes he was unable to hold or carry or lift weighty items. (Tr. 452-53.) Yet the ALJ never mentioned in his decision Rucker's diabetes or its combination with Rucker's other medical conditions.

Similarly, the ALJ's RFC determination did not include limitations based on those conditions together. In the 2003 decision the ALJ determined that Rucker was capable of performing only low-stress, unskilled work because of his mental condition. Yet in his 2007 decision the ALJ did not discuss any limitations related to the mental condition or diabetes. If no limitations existed, the ALJ needed to discuss why.

And finally, the ALJ's findings regarding jobs available in the economy are not supported by substantial evidence. The vocational expert discussed medium and light exertional, unskilled jobs, in which there was limited contact with the public, supervision, or coemployees. (Tr. 462.) As the ALJ did not address or consider whether Rucker had a mental condition or diabetes and any psychological or physical limitations that may be

13

related to those conditions, it is unclear whether the vocational expert's testimony sufficiently relates to Rucker's actual limitations. For all of these reasons, the ALJ's decision must be reversed and the matter remanded.

The court is mindful that Rucker's motion for sanctions has not been resolved. Rucker moved for sanctions for the failure of defense counsel to mail him a copy of the Commissioner's brief. Rucker asked that the court strike the Commissioner's brief from the record and that he be paid a monetary sanction. (Doc. 30, ¶¶ 4, 6, 7.) Also, the court has mentioned defense counsel's failure to file the transcript. In a January 7, 2010, order, the government was directed to "show cause in writing why it failed to file a certificate of service regarding the Commissioner's brief, why it failed to file the transcript in this case, and why sanctions should not be imposed." (Order of 1/7/10 at 13.)

Defense counsel responded with an affidavit indicating that a confluence of events occurred, which unfortunately resulted in failure to file the transcript and failure to send Rucker a copy of the brief. According to counsel, his brief was due on Labor Day, so he filed it on the Friday afternoon before the holiday. The legal assistant assigned to handle Social Security cases was on leave that day, and another support staff person was assigned the responsibility to file the brief, send a copy to Rucker, and file the transcript. Only the first of these occurred, but counsel did not catch, following the long weekend, that he had not received a CM/ECF notice confirming the filing of the transcript and a certificate of service. Counsel states that as a result of this court's January 7 order, his supervisors in the Civil Division at the U.S. Attorney's Office are in the process of making changes to ensure that these omissions do not occur again.

14

In consideration of this explanation, there are four reasons not to sanction defense counsel: the errors were unintentional; they were caused by an unusual concurrence of events; steps are being taken to ensure that such failures do not occur in the future; and, most important, the plaintiff has not been harmed by the mistakes. For these reasons,

IT IS ORDERED that the decision of the Commissioner is reversed and this case is remanded.

IT IS ORDERED that Rucker's motion for sanctions (Doc. # 30) is denied and the order to show cause is discharged.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE